UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ROBERT GOLDBLATT,

                    Plaintiff,

-against-

NEW YORK INSTITUTE OF TECHNOLOGY,

                    Defendant.
--------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-cv-00265 (DRH) (ARL)

**APPEARANCES:**

**For Plaintiff:**
Gregory A. Tsonis, PLLC
6800 Jericho Turnpike, Suite 120W
Syosset, NY 11791
By:   Gregory A. Tsonis, Esq.

**For Defendants:**
Clifton, Budd & DeMaria, LLP
350 Fifth Avenue, Suite 6110
New York, New York 10118
By:   Douglas P. Catalano, Esq.
        Stefanie R. Toren, Esq.

**HURLEY, Senior District Judge:**

## INTRODUCTION

Plaintiff Robert Goldblatt ("Plaintiff") brought this action against Defendant New York Institute of Technology ("Defendant" or "NYIT") asserting claims of discrimination pursuant to the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL"). Plaintiff also asserts a breach of contract claim for alleged violation of a tenure agreement protecting his employment with Defendant.

Presently before the Court is Defendant's motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon

which relief can be granted.  For the reasons set forth below, the motion to dismiss is denied in part and granted in part.

## BACKGROUND

The following relevant facts come from the Amended Complaint and are assumed true for purposes of the instant motion to dismiss:

Plaintiff worked at NYIT as a professor and licensed psychologist for thirty-eight years. (Am. Compl. [ECF No. 21] ¶¶ 6-7.)  He gained tenure status in 1985 and alleges that he "was entitled to certain due process and notice rights and requirements" as a result.  (*Id*. ¶¶ 7, 37.) Defendant renewed his employment contract "numerous times since 1979 without fail" until his termination in March 2017.  (*Id*. ¶¶ 8-9.)  "Upon information and belief, NYIT's alleged grounds for termination was that Dr. Goldblatt was involved in a physical encounter with a patient in June of 2016."  (*Id*. ¶ 10.)  Plaintiff alleges that, "[d]uring a patient consultation, [he] was touched by his patient, and in the process of pushing the patient away, [he] also touched the patient."  (*Id*.)

Plaintiff contends that the patient encounter was a pretextual reason to terminate him, and that he was actually terminated because of his age.  Plaintiff immediately apprised both Defendant and his supervisor, Dr. Brian Harper, about the incident with the patient and terminated the patient relationship in accordance with "appropriate school and customary doctor/patient therapist procedures and protocol."  (*Id*. ¶ 11.)  Plaintiff continued treating patients and teaching students following the incident until his termination without Defendant taking any action. (*Id*.)  Nine months later, in March 2017, Defendant "raised the alleged June 2016 altercation" at a meeting with Plaintiff, Dr. Harper, and Defendant's counsel.  (*Id*. ¶¶ 11-12.) Plaintiff was not represented by counsel at the meeting, nor was he advised to retain counsel in

connection with that meeting. (*Id.* ¶ 12.) After the meeting, Plaintiff "was sent home and told that he would be returning to work shortly thereafter." (*Id.* ¶ 13.)

Subsequently, on or about March 2, 2017, Plaintiff was notified of his termination "through third-party communications." (*Id.* ¶¶ 9, 14.) Though Defendant never contacted Plaintiff directly regarding his termination, Plaintiff alleges, upon information and belief, that Defendant's "alleged grounds for termination was that [Plaintiff] was involved in a physical encounter with a patient in June of 2016." (*Id.* ¶¶ 10, 14.) Defendant did not conduct an investigation into the June 2016 altercation or a hearing regarding Plaintiff's subsequent termination. (*Id.* ¶¶ 15-16.)

Plaintiff, who was 66 at the time of his termination, "knows of no other employee under the age of 55 who has been subjected to termination of employment based on allegations stemming from a similar patient/student altercation without those employees first receiving either written/verbal warnings or some other lesser sanction prior to termination." (*Id.* ¶¶ 9, 19.) Plaintiff names two "younger employees" who were not "outright terminated," but instead received warnings and reprimands "despite allegations of physical altercations with patients/students greater than those in which [Plaintiff] found himself." (*Id.* ¶¶ 20-21, 25.) Plaintiff further points to four colleagues who pursued age discrimination claims against Defendant, and contends that Defendant has a "pattern and practice" of age discrimination. (*Id.* ¶¶ 24-25).

On or about August 2, 2017, Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") and was subsequently granted permission to bring this instant action on October 16, 2017. (*Id.* ¶¶ 28.)

# DISCUSSION

I.  *Rule 12(b)(6) Legal Standard*

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. A plaintiff must provide facts sufficient to allow defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id*. at 678 (quoting *Twombly*, 550 U.S. at

556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"[A]t the pleadings stage . . ., a plaintiff has a 'minimal burden' of alleging facts 'suggesting an inference of discriminatory motivation.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). The allegations in the complaint "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn*, 795 F.3d at 311.

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's . . . invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Courts making the plausibility determination should do so "mindful of the elusive nature of intentional discrimination" and the frequency by which plaintiffs must "rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86-87 (italics and internal quotation marks omitted).

## II.     The Parties' Arguments

Plaintiff sets forth a claim of age discrimination pursuant to the ADEA and the NYSHRL, and a breach of contract claim based on his termination, which he alleges violated the terms of his tenure employment agreement.

In its motion to dismiss, Defendant argues Plaintiff failed to plausibly allege sufficient facts to support his age discrimination claim and also failed to plead age as the "but-for" cause of his termination. (Def.'s Mem. in Supp. [ECF No. 23-5] at 7-9.) Defendant asserts the complaint is replete with conclusory statements and "blanket assertion[s]," rather than factual allegations such as "age-based remarks" or other "discriminatory comments" that would plausibly lead to the conclusion age was the "but-for" cause of termination. (*Id*.) Furthermore, Defendant points to the fact that Plaintiff admitted to engaging in the patient altercation. With respect to the breach of contract claim, Defendant argues that Plaintiff has failed to identify specific contractual provisions that were breached and that, in any event, the claim is preempted under Section 301 of the Labor Management Relations Act, 29 U.S.C. §1985 ("LMRA"). (*Id*. at 4-11).

In his opposition, Plaintiff argues for a lower pleading than the one outlined in Defendant's motion because a heightened pleading standard does not apply to employment discrimination claims. (Pl.'s Mem. in Opp. [ECF No. 24] at 4-7.) Plaintiff argues that his claim survives when weighed against either this lower pleading standard or the standard advanced by Defendant: "Dr. Goldblatt's complaint, on its face, not only notifies Defendant of the claims, but also sets forth a plausible basis for discrimination for which discovery is prudent and necessary before adjudication on the merits…." (*Id.* at 9.) With respect to the breach of contract claim, Plaintiff attaches "numerous documents identifying, not only his employment with NYIT and its subsidiary NYCOM, but also his tenure status." (*Id.* at 10.) Plaintiff argues that he is not

required to identify a contractual provision that was breached and that his claim survives because he has shown the existence of an employment agreement and his tenured status.

III.  ADEA and NYSHRL Claims

    a.  ADEA and NYSHRL

The ADEA provides that "it shall be unlawful for an employer…to discharge any individual or otherwise discriminate against any individual…because of such individual's age." 29 U.S.C. § 623(a)(1). The statute protects those who are more than 40 years old. *Id.* § 631(a). To establish a *prima facie* case of age discrimination under the ADEA, a plaintiff must demonstrate: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).

A plaintiff is not required to make out a *prima facie* case to survive a motion to dismiss; "[a]t the pleading stage, a plaintiff must plausibly allege that (1) his employer took an adverse employment action against him, and (2) his age 'was the 'but-for' cause of the employer's adverse action.'" *Powell v. Delta Airlines*, 145 F. Supp. 3d 189, 199 (E.D.N.Y. 2015) (quoting *Vega*, 801 F.3d at 86); *Alleyne v. NAACP Legal Def. & Educ. Fund, Inc.*, 2015 WL 6869731, at *5 (E.D.N.Y. Nov. 6, 2015) ("To state a claim pursuant to the ADEA a plaintiff must allege that age was the 'but for' cause of the employer's adverse action, and not merely that it was a motivating factor."); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse action.").

One way to plausibly allege discrimination is to show disparate treatment, however generic disparate treatment allegations paired with the names of alleged comparators is generally insufficient to state a claim. *See Marcus v. Leviton Mfg. Co.,* 661 F. App'x 29, 32 (2d Cir. 2016) ("He provides only a single name and he offers no dates, ages, or reasons with respect to the termination of other employees."); *Williams v. Classic Sec.*, 2019 WL 4511953, at *5 (S.D.N.Y. Sept. 19, 2019) ("Williams's conclusory allegation that 'other similarly [situated] employees...under the age of 40 are not reprimanded when its [sic] time for them to go home' is insufficient to satisfy his burden, at least absent additional facts").

A plaintiff may also plausibly allege an age discrimination claim "indirectly, by alleging circumstances that give rise to a plausible inference of discrimination." *Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 170–71 (E.D.N.Y. 2017). "Circumstances contributing to an inference of age-based employment discrimination may include: ... a sequence of events leading to an employee's termination; or the timing of the termination." *Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F. Supp. 2d 230, 245 (E.D.N.Y. 2010).

Plaintiff's NYSHRL claim can be handled concomitantly with his ADEA claim because claims of age discrimination under the NYSHRL "are analyzed under the same standard as claims brought under the ADEA." *Powell*, 145 F. Supp. 3d at 198 (citing *Abrahamson v. Bd. of Educ. Of Wappingers Fall Cent. Sch. Dist.*, 374 F.3d 66, 71 n.2 (2d Cir. 2004)).[1]

b. The Motion to Dismiss Plaintiff's ADEA and NYSHRL Claims is Denied

For the purposes of this motion, Defendant does not dispute that Plaintiff suffered an adverse employment action when he was terminated. (Def.'s Mem. in Supp. at 7.) Therefore,

---

[1] As Defendant points out, the NYSHRL was recently amended to explain that the statute is to be construed liberally, however the amendment does not apply to claims filed prior to the amendment. 2019 N.Y. Sess. Laws Ch. 160 (A. 8421) (McKinney).

the only question to be resolved here is whether Plaintiff has plausibly alleged age as the "but-for" cause of his termination.

Defendant argues that Plaintiff failed to allege how he was "similarly situated in all material respects" to the two "younger" employees named in the Amended Complaint. (Def.'s Mem. in Supp. at 8.) Defendant asserts that merely naming comparators is insufficient to state a disparate treatment claim, and that more facts must be provided in the complaint, including "the ages of these alleged [Defendant] employees, the positions they held [with Defendant] and the circumstances surrounding the alleged 'physical altercations' and resulting discipline to which Plaintiff compares his circumstances." (*Id.*) With respect to Plaintiff's allegations of a pattern and practice of age discrimination, Defendant similarly argues that simply naming the individuals who pursued legal action is insufficient, and that in order for these allegations to survive a Rule 12(b)(6) motion, the "individuals' ages, positions [with Defendant] and circumstances surrounding their alleged claims against [Defendant]" need to have been pled. (*Id.*)

Plaintiff's allegations that he was 66 when he was terminated and allegedly received a harsher punishment than two younger employees, as well as his allegations about a pattern and practice of age discrimination, are insufficient to meet the pleading standard. *See Marcus,* 661 F. App'x at 32 (categorizing comparators as "younger" "[w]ithout any information as to whether these employees were otherwise similarly situated or the specifics of their conduct…does not give rise to even a minimal inference of age discrimination."). Nonetheless, the fact that Defendant was aware of the June 2016 altercation and took no action for nine months, allowing Plaintiff to continue his job without any warning or reprimand, certainly gives the Court pause. Defendant argues that "even if [Defendant] became aware of the alleged 'physical encounter

with a patient' in June 2016, which [Defendant] denies, yet delayed terminating Plaintiff's employment until March 2017, Plaintiff fails to allege how [Defendant's] purported delay had anything to do with his age." (Def.'s Mem. in Rep. [ECF No. 26] at 4.) However, Plaintiff allegedly has no prior history of patient altercations and complied with proper reporting protocol. No investigation was conducted at the time of the altercation, despite Plaintiff informing Defendant about it, and no action was taken until nine months later.

Defendant also argues that Plaintiff's claim of pretext is subverted by his admission that he engaged in the conduct for which he was terminated. However, the issue is not Plaintiff's involvement in the patient altercation but whether there is a plausible presumption of age discrimination that arises from the aggregated circumstances surrounding the decision to terminate Plaintiff. The nine-month delay between the altercation and termination, the lack of investigation by Defendant into the altercation, and the fact Plaintiff continued to work in his normal employment capacity for the nine months following the altercation, undermine Defendant's reasoning for the termination.

Plaintiff persuasively notes it is difficult to find a "direct smoking gun" in discrimination cases, and often the court must rely on "bits and pieces" to support an inference of discrimination. *Vega*, 801 F.3d at 86. Given the "bits and pieces" alleged here and the early stage of the proceeding, the claim survives Defendant's motion to dismiss. *See Bahnsen v. Town of Brookhaven*, 2018 WL 5077167, at *7 (E.D.N.Y. July 31, 2018), report and recommendation adopted, 2018 WL 4404074 (E.D.N.Y. Sept. 17, 2018) ("Plaintiff's claims may well fail at the summary judgment stage when discovery is complete….For now, however, the Court declines to recommend dismissal on the ground that Plaintiff fails to plausibly plead an ADEA claim of discrimination.").

Having determined that the federal ADEA claim survives this motion to dismiss, the Court concludes that Plaintiff's comparable cause of action under the NYSHRL also survives the instant motion.

IV. *Breach of Contract Claims*

a. Consideration of Materials Outside the Complaint

In connection with the breach of contract claim, both Plaintiff and Defendant attach to their briefs documents that were not attached to the Amended Complaint. Usually, "a plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 122-123 (S.D.N.Y. 2010) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). However, in adjudicating a motion to dismiss, the Court is entitled to consider: "(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Oberstein v. SunPower Corp.*, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010) (internal citations and quotations omitted); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir. 2002). Thus, the Court must determine what materials "outside" the Complaint it may properly consider on this motion.

Defendant attaches the following documents to its motion to dismiss: (1) the Amended Complaint; (2) an affidavit of Jerry Balentine, D.O., which in turn attaches a June 26, 2014 letter

concerning Plaintiff's employment as an Associate Professor in NYITCOM's Department of Family Medicine; and (3) the "current collective bargaining agreement between the American Association of University Professors of the New York Institute of Technology, Inc. and NYIT" (the "CBA"). (Catalano Aff. [ECF No. 23-1].)

The Amended Complaint is obviously considered on this motion. With respect to the other documents, Defendant argues that "the Court may consider the June 26, 2014 letter on a motion to dismiss as the document governing the terms of Plaintiff's employment is integral to Plaintiff's breach of tenure employment agreement claim." (Def.'s Mem. in Supp. at 11.) Defendant raises a similar argument with respect to the CBA. (*Id.* at 13 n.5.) Plaintiff does not argue against the inclusion of these documents, and in fact attaches the June 26, 2014 letter to his opposition. (Goldblatt Aff., Ex. F [ECF No. 25-1].) Thus, the Court will consider the June 26, 2014 letter. As for the CBA, it is unclear whether Plaintiff had notice of this document, particularly given Defendant's contention that Plaintiff's employment was not subject to its terms. (Def.'s Mem. in Supp. at 3.) Nonetheless, because Plaintiff does not dispute its inclusion, the Court will consider it.

Plaintiff attaches the following documents to his opposition: (A) July 25, 1998 letter "acknowledging [his] appointment as Associate Professor with tenure"; (B) August 19, 1991 Faculty Employment Agreement with NYCOM, "with Rider indicating tenure with NYIT"; (C) September 1, 1994 Faculty Employment Agreement with NYCOM, "with Rider indicating tenure with NYIT"; (D) July 19, 2017 email from NYIT stating that human resources records were adjusted to indicate [Plaintiff's] tenure; (E) April 27, 2014 memo "indicating tenure achieved as of 1985" and (F) June 26, 2014 letter concerning Plaintiff's employment as an Associate Professor in NYITCOM's Department of Family Medicine, also included with

Defendant's motion. (Goldblatt Aff. [ECF No. 25].)[2] Plaintiff introduces these documents to establish that he held a tenured position with NYIT, a contention that he repeats throughout his complaint. (Pl.'s Mem. in Opp. at 10 ("Annexed to the [Goldblatt] Affidavit is correspondence from NYIT to Dr. Goldblatt explicitly acknowledging the existence of tenure on his behalf."); Am. Compl. ("This action is brought due to NYIT's breach of the tenure agreement under which Dr. Goldblatt's employment was protected.").) Defendant does not argue against consideration of these documents for purposes of this motion. Accordingly, the Court will consider them in deciding the motion to dismiss.

    b.  Breach of Contract

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011).

With respect to the existence of an agreement, "a complaint must 'allege the essential terms of the parties' purported contract in nonconclusory language, including the specific provisions of the contract upon which liability is predicated.'" *Childers v. New York & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (quoting *Sirohi v. Trs. of Columbia Univ.*, 162 F.3d 1148, 1998 WL 642463 at *2 (2d Cir.1998)); *see also Belfon v. Credit Check Total Consumerinfo.com, Inc.*, 2018 WL 4778906, at *5 (E.D.N.Y. Oct. 1, 2018). A plaintiff must plead "'factual allegations regarding, *inter alia*, the formation of the contract, the date it took place, and the contract's major terms.'" *See Childers* 36 F. Supp. 3d at 312 (quoting

---

[2] It appears that what is denoted as Exhibit E in Plaintiff's affirmation, the April 27, 2014 memo, is missing from the compilation of exhibits on the docket. Additionally, the exhibit cover pages on the docket do not line up with the exhibits as lettered in the affirmation. In an effort to avoid confusion, the Court refers to the exhibits by the letter they correspond to in Plaintiff's affirmation, with the understanding that Exhibit E, the April 27, 2014 memo, is missing.

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand,* 455 Fed. App'x 102, 104 (2d Cir. 2012)). Furthermore, a plaintiff must specifically point to the relevant provision of the contract that has allegedly been breached. *See Belfon*, 2018 WL 4778906, at *6 ("Without pinpointing the relevant provision with the requisite specificity, it is impossible to assess the parties' rights and obligations under a potential contract and determine whether the Defendant's alleged actions breached any promises.").

    c. The Motion to Dismiss Plaintiff's Breach of Contract Claim is Granted

As discussed above, in order to plead an "agreement" for purposes of a breach of contract claim, New York law requires a plaintiff to identify the specific contractual provisions that were allegedly breached. Both parties have submitted documentation in support of their respective positions regarding the existence of an agreement. The June 26, 2014 letter that both Plaintiff and Defendant attached to their briefs, as well as other letters and correspondence referenced by Plaintiff, speak to Defendant's previous acknowledgement of Plaintiff's alleged tenured status. Plaintiff's tenured status is not at issue here, and for the purposes of this motion, Defendant concedes Plaintiff's tenured status. (Def.'s Mem. in Rep. at 8 n.5). Defendant compellingly maintains that even if Plaintiff held a tenured position at the time of his termination, he failed to identify the specific terms Defendant allegedly breached.

In opposition, Plaintiff relies on *Oberstein* to support his argument that it would be premature to dismiss Plaintiff's breach of contract claim, despite failing to cite specific terms of an agreement or attaching the agreement itself. (Pl.'s Mem. in Opp. at 11). However, the *Oberstein* Amended Complaint contained "several paragraphs that discuss[ed] the terms of the [agreement]," and the court was able to identify "the essential duties due by each party…under the terms of the agreement" and that "[Defendant] did not perform its role…." *Oberstein*, 2010

WL 1705868, at **5-6. Plaintiff's Amended Complaint in the instant matter differs markedly from the Amended Complaint in *Oberstein*. While there is documentation regarding Defendant's renewal of Plaintiff's employment, and even his tenured status, Plaintiff does not point to any specific terms regarding Defendant's contractual obligations, or the actual agreement itself. For example, Plaintiff asserts he was entitled to "certain due process and notice rights and requirements," including an investigation, hearing, and notice, without pinpointing or explaining any specific terms of the "tenure employment agreement" that relate to due process and notice rights. Indeed, the Court is unable to identify any "tenure employment agreement" in the documents Plaintiff attached to his opposition, let alone any provisions specifically regarding due process rights.[3] Plaintiff instead conclusively states it is "axiomatic" Defendant breached Plaintiff's due process and notice rights. (Pl.'s Mem. in Opp. at 11). "This simple characterization of the nature of the promise, and the equally simplistic allegations that Defendant failed to perform, are insufficient to make the requisite plausible factual demonstration of the basis of Plaintiffs' claim." *Fink v. Time Warner Cable*, 810 F. Supp. 2d 633, 645 (S.D.N.Y. 2011). Accordingly, Plaintiff's breach of contract claim is dismissed.

Because Plaintiff's breach of contract claim fails, it is unnecessary to determine whether the alleged contractual obligations originated from the CBA and are therefore preempted under Section 301 of the LMRA. In any event, Plaintiff does not address this argument in his brief, thereby waiving his opposition to it.

---

[3] The documents refer to Plaintiff's tenured position, but none of the documents attached to the opposition appear to be an agreement specifically regarding Plaintiff's tenure status, save for the Riders attached to Exhibits B and C, both of which are titled "Whole-Time Faculty Employment Agreement." The Riders, which contain the same language, state in their entirety: "It is understood that the attached contract between Robert B. Goldblatt, Ph.D., and New York College of Osteopathic Medicine of New York Institute of Technology does not jeopardize Dr. Goldblatt's tenured position at New York Institute of Technology which remains available to him." [Goldblatt Decl. Exs. B and C [ECF No. 25-1] at 7, 15.) These documents do not otherwise discuss Plaintiff's tenured status or any resulting due process rights.

## CONCLUSION

For the foregoing reasons, Defendant's Rule 12(b)(6) motion to dismiss is denied as to the ADEA and NYSHRL discrimination claims and granted as to the breach of contract claim.

**SO ORDERED.**

Dated: Central Islip, New York        s/ Denis R. Hurley
      August 25, 2020                      Denis R. Hurley
                                                United States District Judge