

6800 jericho tpke
suite 120w
syosset, ny 11791
p: 516.393.5876
f: 516.393.5819
www.gatlawoffice.com
gtsonis@gatlawoffice.com

June 6, 2023

**Via E-FILE**
Hon. Joan M. Azrack
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

    Re:  *Goldblatt v. New York Institute of Technology*.: 18cv00265 (JMA)(LGD)

Dear Judge Azrack:

    I represent Plaintiff, Robert Goldblatt, in connection with the above-referenced matter and his claim for age discrimination. I write this letter in opposition to Defendant's letter request for a pre-motion conference related to Defendant's request to move for summary judgment.

    *Material Issues of Fact Preclude Summary Judgment.*

    Federal Rule of Civil Procedure 56 provides that "the judgment sought should be rendered *only* if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In employment discrimination cases, typically, discriminatory intent is the central issue, as expressed in opposing counsel's discussion of the burden shifting analysis under *Mcdonnell Douglas*. The determination of intent, however, presents an issue of fact for a jury, and given this reality, the Second Circuit has repeatedly emphasized that "in an employment discrimination case when…the employer's intent is at issue, [a] trial court must be especially cautious about granting summary judgment. *Kerzer v. Kingly, Mfg.*, 156 F.3D 396, 400 (2d. Cir. 1998); *Gallo v. Prudential Residential Servs., Ltd. Partnership*, 22 F.3D 1239, 1224 (2d. Cir. 1994). Because discrimination claims implicate an employer's usually unstated intent and state of mind, *see Mieri v. Dacon*, 759 F.2d 989, 998 (2d. Cir. 1985), rarely is there a "direct, smoking gun, evidence of discrimination." *Richards. v. N.Y.C. Bd. Of Educ.*, 668 F.Supp. 259, 265 (S.D.N.Y. 1987), *aff'd* 842 F.2d 1288 (2d. Cir. 1988.) Instead, plaintiffs usually must rely on "bits and pieces" of information to support an inference of discrimination, i.e., a "mosaic" of intentional discrimination. *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d. Cir. 1998), *abrogated in part on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S. Ct. 2257, 141 L.Ed.2d 633 (1998).

    In the instant matter, there exists numerous material issues of fact that render a proposed motion for summary judgment futile. Mr. Goldblatt, a man in his late sixties, was employed by



New York Institute of Technology ("NYIT") for over thirty-years as a tenured professor and clinical psychologist. Through the course of discovery it was concluded that over his thirty-plus years of service to NYIT, there was not one blemish on his employment record despite his lengthy career with NYIT. He repeatedly received contractual renewals to remain employed by NYIT including consistent raises in salary. At the time of his termination Dr. Goldblatt was, due to his years of employment, one of the highest paid employees providing clinical treatment in psychology. Not surprisingly, during the course of depositions, it was uncovered that NYIT replaced Dr. Goldblatt with an individual younger than him and at a lower salary point.

In June of 2016, there was an altercation between Dr. Goldblatt and a patient that he had been treating. As per Dr. Goldblatt's testimony, the patient made a physical and sexual advance upon Dr. Goldblatt after confessing her attraction to him. Per the testimony, the patient reached for Dr. Goldblatt's thigh, prompting Dr. Goldblatt to stand in a defensive posture. At that point of the altercation there was additional accidental physical contact as Dr. Goldblatt attempted to dissuade his patient from further advances. Dr. Goldblatt dutifully ended the session with the patient and escorted her out of the office. In further proof of his professionalism, Dr. Goldblatt immediately notified his direct supervisor, Brian Harper, of the altercation and with Mr. Harper's agreement prepared a letter terminating the doctor-patient relationship with the patient. Per Dr. Goldblatt's testimony, Mr. Harper reviewed and edited the letter before it was sent to the patient.

Following the altercation, Dr. Goldblatt continued to successfully treat patients on behalf of NYIT. There was no further issues or concerns. NYIT claims that in or around February of 2017 they were informed by another doctor/employee from NYIT, Dr. Leder, that Dr. Leder was allegedly told by the patient about the aforementioned June 2016 interaction. NYIT admits in deposition testimony that the decision-makers who terminated Dr. Goldblatt never had direct contact with the patient, nor did they interview her to test her veracity. In fact, they relied solely on statements from Dr. Leder which constitutes inadmissible hearsay. The record shows that, subsequently, Dr. Goldblatt was called to a meeting with Mr. Harper and NYIT's attorney, Jordan Thompson during which time he was questioned about the interaction that had taken place almost nine months prior. Dr. Goldblatt was never informed that an investigation was being conducted, nor was he informed prior to the meeting that an allegation was made against him. At no time did NYIT explain to Dr. Goldblatt in advance what the meeting would entail, despite being in a position to do so.

Additionally, Dr. Goldblatt was not instructed or advised to bring an attorney to the above-referenced meeting despite the fact that NYIT had legal counsel present. He was not advised of



any measures of protection to which he should have been entitled. A review of the deposition testimony and the record produced during discovery makes it patently clear that the "investigation" that took place nine months following the June 2016 interaction was pretextual in nature, serving as a basis to terminate an aged and expensive employee.

Shortly following the meeting with Mr. Harper and NYIT's attorney, Dr. Goldblatt was terminated. Notably, the alleged investigation did not include a review of Dr. Goldblatt's client records, did not include an interview with the patient, did not involve legal representation and/or union representation on behalf of Dr. Goldblatt, and did not even include NYIT's Human Resources Department. Furthermore, based on the testimony provided in this matter, it is clear that there is a material issue of fact as to what Dr. Goldblatt stated during his surprise meeting with Mr. Harper and NYIT's counsel versus what Mr. Harper and Mr. Thompson allege was shared.

Applying these facts to the *McDonnell Douglas* framework, Plaintiff has set forth a *prima facie* case for discrimination. The legitimate business reasons proffered by Defendant are undoubtedly pretextual in nature. Defendant claims that termination was proper due to patient safety concern. Such belief is in stark contrast to the fact that Dr. Goldblatt remained employed with NYIT for over thirty years, treating countless patients during the course of his employment, and is further challenged by the fact that NYIT was notified of the incident immediately and thereafter allowed Dr. Goldblatt to continue to treat patients for an additional nine months before choosing to terminate him unceremoniously. It should also be noted that the decision-maker in connection with Dr. Goldblatt's termination is also tasked with making NYIT budgetary decisions as it relates to treating psychologists and their salaries.

Given the material issue of facts present in this matter, a pre-motion conference for Defendant's proposed summary judgment motion should be denied.

Respectfully Submitted,

_____/S/_____
Gregory A. Tsonis (GT-5737

3