UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------X
ROBERT GOLDBLATT,

                      Plaintiff,

   v.

NEW YORK INSTITUTE OF TECHNOLOGY,

                      Defendant.
---------------------------------------X

**REPORT AND RECOMMENDATION**

2:18-cv-00265 (JMA)(LGD)

**LEE G. DUNST**, Magistrate Judge:

      Plaintiff Robert Goldblatt ("Plaintiff") alleges that Defendant New York Institute of Technology ("NYIT") improperly fired him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.* (McKinney). Electronic Case Filing ("ECF") No. 21 (the "Amended Complaint"). Presently before the Court is NYIT's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (the "Motion"). ECF No. 56. On October 2, 2024, the Honorable Joan M. Azrack referred the Motion to the undersigned for a Report and Recommendation. *See* Electronic Order, dated October 2, 2024. For the reasons set forth below, the undersigned respectfully recommends that the Court GRANT Defendant's Motion for Summary Judgment as to all claims and DISMISS Plaintiff's Amended Complaint with prejudice.

**I.    BACKGROUND**

    **A.    Factual Background**

      The Court takes the following facts from the parties' Local Rule 56.1 Statements, deposition transcripts, affidavits, and exhibits. Where the Court cites a party's Local Rule 56.1

Statement, the fact is undisputed unless otherwise noted. At the summary judgment stage, the Court "construe[s] the facts in the light most favorable to the non-moving party and [resolves] all ambiguities and draw[s] all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

1. <u>Plaintiff's Employment at NYIT</u>

Defendant is a private non-for-profit educational institution with a campus in Old Westbury, New York. ECF No. 56-1 ¶¶ 2-3. NYIT hired Plaintiff as a faculty member at its medical school—the College of Osteopathic Medicine ("NYITCOM")—in 1991. *Id.* ¶ 4. Plaintiff remained a faculty member for more than two decades and, in 2014, at the age of 64, was reappointed as a full time Associate Professor in the Department of Family Medicine at NYITCOM. *Id.* In that position, he taught students and also worked as a clinical psychologist, treating patients at the W. Kenneth Riland Academic Health Care Center ("AHC") at NYIT. *Id.* ¶ 9-10. As both a faculty member and clinician, Plaintiff received NYITCOM's Faculty Handbook and, in January 2017, executed a Clinical Faculty Agreement. *Id.* ¶ 5, 11. Plaintiff treated patients at NYIT for nearly three decades without incident, and there is no evidence in the record that anyone at NYIT ever made any comments—direct or subtle—about Plaintiff's age.

Plaintiff reported directly to the Chair of the Department of Family Medicine, Dr. Nancy Bono. *Id.* ¶ 15. Dr. Bono in turn reported to the Dean of NYITCOM, Dr. Wolfgang Dilliar. *Id.* ¶ 16. Additionally, Dr. Brian Harper, Medical Director of the AHC, was responsible for ensuring compliance with legal regulations and laws respecting the delivery of healthcare. *Id.* ¶¶ 18-19. Dr. Harper reported to the Vice President of Medical Affairs and Global Health, Dr. Jerry Balentine, who reported to NYIT's President. *Id.* ¶¶ 17-23.

2. <u>The June 3, 2016 Incident</u>

In 2015, Plaintiff began treating an unnamed female Patient (the "Patient") for issues

2

related to Parkinson's Disease. ECF No. 57-6 ¶ 6. According to Plaintiff, the Patient began to express feelings of attraction towards Plaintiff during their sessions. *Id*. Specifically, the Patient reported fantasizing about Plaintiff when she had sexual relations with her husband. ECF No. 56-18 at 86:6-24. Plaintiff diagnosed the Patient with "transference," which occurs when "feelings of emotions [a patient] may have toward an individual [are] transferred upon her treating psychologist." ECF No. 57-6 ¶ 6. At first, Plaintiff did not believe that the Patient planned to "act on her impulses." *Id.* ¶ 7. But during a session with Plaintiff on June 3, 2016, the Patient allegedly "touched [Plaintiff's] inner thigh in an inappropriate manner." *Id.* ¶¶ 7-8 (the "June 3 Incident").

Plaintiff has provided varying accounts over time of what happened next. In his contemporaneous handwritten notes recorded the same day as the June 3 Incident, Plaintiff recounted the following in his own words:

> Pt. indicated that she wanted to be closer and that she was getting warm. *She touched me sexually in the crotch area and was responded by touching her breasts.* No clothing was removed or attempted. No kissing or touching of flesh. Only exterior clothing. After the brief exchange, it was clear boundaries had to be re established and adhered to. The session ended with the clear understanding that this would be the next discussions [sic]. It was clear *both pt + therapist had crossed a line*.

ECF No. 56-15 (emphasis added). Thus, in his own notes, Plaintiff wrote that his response to the Patient's touching him "sexually" was to respond by "touching her breasts." *Id.* Plaintiff also noted that "boundaries had to be re established" and that both parties "had crossed a line." *Id.*

However, Plaintiff's account of the interaction is now quite different. Plaintiff now contends that he "rose from [his] chair and physical contact was inadvertently made during which time [he] made contact with her chest area." ECF No. 57-6 ¶ 8. By this account, Plaintiff admits physical contact with the female Patient's "chest area" but contends that such contact was

3

unintentional and a result of his "initial shock." *Id.*

### 3. Plaintiff's Meeting with Dr. Harper on June 3, 2016

On the same day as the June 3 incident, Plaintiff approached Dr. Harper to inform him of the encounter with the Patient and to request her discharge.[1] ECF No. 56-18 at 125:3-19; 134:9-19. Plaintiff and Dr. Harper have differing recollections regarding the nature of their conversation. The parties agree that Plaintiff did inform Dr. Harper that he believed the Patient was exhibiting transference. ECF No. 56-1 ¶ 58. While Plaintiff asserts that he informed Dr. Harper that the Patient touched Plaintiff's legs, Dr. Harper does not recall any discussion of physical contact. ECF No. 56-18 at 133:2-12; ECF No. 57-2 at 98:3-7.

After the meeting, Plaintiff drafted a discharge letter, indicating that he could no longer treat the Patient because of "a major breach of trust" that had occurred during the June 3 session and because "[t]he relationship ha[d] been compromised in a significant manner impairing objectivity." ECF No. 56-1 ¶¶ 63-68; ECF No. 56-13 (Discharge Letter). Here, too, the parties have different recollections. Plaintiff contends that he provided a copy of the discharge letter to Dr. Harper for review. ECF No. 56-18 at 141:6-143:8. Dr. Harper, meanwhile, denies having reviewed the discharge letter at all and notes that it was NYIT's policy for him to sign off on all discharge letters. ECF No. 57-2 at 102:14-104:2; 111:5-20; 101:11-22. Plaintiff, rather than Dr. Harper, executed the discharge letter. ECF No. 56-1 ¶ 62. There is no evidence in the record (such as an email) providing documentary support that Plaintiff provided a copy of the discharge letter to Dr. Harper. At no point during 2016 did the information regarding Plaintiff's discharge reach Dr. Balentine. *Id.* ¶ 7. That is because it is apparently not out of the ordinary for clinicians to request discharges. *Id.* ¶ 69.

---

[1] In this context, discharge refers to the release of a patient from the care of a medical professional.

### 4. The February/March 2017 Investigation

Nine months after the June 3 Incident, the Patient reported to her new clinician, Dr. Adena Leder, that she had experienced an inappropriate sexual interaction with Plaintiff while he was treating her. *Id.* ¶¶ 27-29. Dr. Leder in turn reported the Patient's comments to Dr. Harper and noted that the Patient wished to remain anonymous. *Id.* ¶ 30. Dr. Harper then reported the incident to NYIT's Associate General Counsel and Privacy Officer Jordan Thompson. *Id.* ¶ 31. Thompson advised Executive Director of Human Resources Carol Jablonsky, General Counsel Catherine Flickinger, and Dr. Balentine of the report by email. ECF No. 56-9 (email chain). That group determined that the next step would be for Thompson and Dr. Harper would meet with Dr. Leder to discuss how she learned about the June 3 Incident and ask her to inform the Patient that the administration was intending to investigate and to request that she provide her name and contact information on the record. ECF No. 56-11 (email chain). The Patient refused to reveal her identity, but Dr. Harper was able to verify that she was the same patient who had been discharged by Plaintiff less than a year earlier. ECF No. 56-1 ¶ 55. The group also agreed that they would speak with Plaintiff to obtain his view on the incident. *Id.*

As planned, Thompson and Dr. Harper met with Plaintiff to discuss the incident on March 1, 2017. *Id.* ¶ 72. Although initially skeptical of the Patient's allegations, Thompson later concluded that the touching was "mutual[]" as a result of the discussion with Plaintiff. ECF No. 57-4 at 63:4-7. Dr. Harper had similar impressions, testifying that he thought Plaintiff described "inappropriate contact . . . and he felt bad about that." ECF No. 57-2 at 135:5-14. Plaintiff contends that, during this meeting, he described the touching as unintentional and a result of his attempt to reject the Patient's initial advances. Notably, the version of the June 3 Incident that Plaintiff claimed to tell Thompson and Dr. Harper on March 1, 2017 is not entirely consistent with his own contemporaneous notes from June 3, 2016, which detail how he

"responded [to the Patient's initial contact] by touching her breasts" and do not state that this touching was unintentional as he later claimed. ECF No. 56-1 ¶¶ 98-100.

Immediately after the meeting with Plaintiff, Thompson wrote Flickinger with his immediate impressions, noting "[j]ust wrapping up the meeting. Goldblatt admitted to touching her breasts." *Id.* ¶ 76; ECF No. 56-14 (email chain). The same point was also communicated to Dr. Balentine. ECF No. 56-1 ¶ 77. As a result, Dr. Balentine immediately suspended Plaintiff from seeing patients until the investigation concluded. *Id.* ¶ 82.

Plaintiff now contests the legitimacy of the investigation, citing examples of alleged procedural irregularities. For example, Plaintiff suggests that he was not given notice prior to his interview that he was the subject of an investigation. ECF No. 57-6 ¶¶ 17-19. Nor, according to Plaintiff, was he afforded the opportunity to appear with legal counsel. *Id.* It is also true that, given the Patient's reluctance to provide her name, no one at NYIT conducted a formal interview of the Patient, despite efforts to do so. *See* ECF No. 56-1 ¶¶ 52-56.

### 5. Plaintiff's Termination On or About March 10, 2017

Believing that he had confirmed that Plaintiff engaged in inappropriate, mutual sexual contact with the Patient, Dr. Balentine recommended that Plaintiff be terminated. *Id.* ¶¶ 102-07. He felt that "[t]he facts were clear. And it's a transgression of a provider, an act of sexual contact with a patient is such a breaking of trust that I did not think there was any other investigation necessary." ECF No. 57-5 at 69:24-70:17. Still, Dr. Balentine recognized that Plaintiff had been employed at NYIT for nearly three decades and was never the previous subject of an investigation for inappropriate conduct. ECF No. 56-1 ¶ 110; ECF No. 56-16 (email chain). However, Dr. Balentine concluded that the nature of the allegations—which Dr. Balentine believed were corroborated by discussions with Plaintiff—gave him no other choice but to recommend terminating Plaintiff. ECF No. 56-1 ¶¶ 106-07.

6

As a result, on March 9, 2017, after consulting with Dean Gilliar, Dr. Balentine wrote to Interim President Dr. Rahmat Shoureshi and recommended that Plaintiff be fired. *Id.* ¶ 113. Specifically, Dr. Balentine noted that "[b]ased on our investigation, we have determined that Dr. Goldblatt committed serious professional misconduct in the course of his clinic duties." *Id.* ¶ 114. The email also took note that, pursuant to the NYITCOM Faculty Handbook, "[a] faculty member may be dismissed by the President . . . for cause, based on the recommendation of the Dean [Gilliar] and the Vice-President for Health Sciences and Medical Affairs [Dr. Balentine]." *Id.* ¶ 114; ECF No. 56-16 (email chain). Dr. Shoureshi approved Plaintiff's termination the same day. ECF No. 56-1 ¶ 115; ECF No. 56-16 (email chain). Plaintiff was notified of his termination within the next few days. ECF No. 56-1 ¶ 119-21. NYIT subsequently replaced Plaintiff with a younger individual. *See* ECF No. 57-5 at 88:25-90:4. Plaintiff was 66 years old when his employee ended at NYIT. ECF No. 56-1 ¶ 122.

### B. Procedural History

Plaintiff commenced this case in January 2018, alleging discrimination claims under the ADEA and NYHRL and a breach of contract claim. ECF No. 1. Nearly a year and a half later, on June 28, 2019, Plaintiff amended his complaint with the same three causes of action. ECF No. 21. In October 2019, Defendant sought to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. ECF No. 23. On August 25, 2020, Judge Denis R. Hurley (to whom the case previously was assigned) granted Defendant's motion to dismiss as to the breach of contract claim but denied the motion as to the two age discrimination claims. *Goldblatt v. N.Y. Inst. of Tech.*, No. 18-CV-00265, 2020 WL 5027150, at \*8 (E.D.N.Y. Aug. 25, 2020). In denying the motion to dismiss, Judge Hurley noted:

> Plaintiff persuasively notes it is difficult to find a "direct smoking gun" in discrimination cases, and often the court must rely on "bits and pieces" to support an inference of discrimination. *Vega*, 801

7

> F.3d at 86. Given the "bits and pieces" alleged here and the early
> stage of the proceeding, the claim survives Defendant's motion to
> dismiss. *See Bahnsen v. Town of Brookhaven*, 2018 WL 5077167,
> at *7 (E.D.N.Y. July 31, 2018), *report and recommendation
> adopted*, 2018 WL 4404074 (E.D.N.Y. Sept. 17, 2018)
> ("Plaintiff's claims may well fail at the summary judgment stage
> when discovery is complete….For now, however, the Court
> declines to recommend dismissal on the ground that Plaintiff fails
> to plausibly plead an ADEA claim of discrimination.").

*Id.* at *5.

Discovery in this matter was protracted over the years that followed, and the parties sought—and were granted—eight extensions. *See* Electronic Order, dated December 20, 2022.

Defendant moved for summary judgment on the remaining age discrimination claims on September 15, 2023. ECF No. 56. Plaintiff opposed the Motion, principally on the grounds that the investigation into his conduct was defective, thus rendering Defendant's reason for firing him pretextual. ECF No. 57. Plaintiff timely filed a reply. ECF No. 58. On October 2, 2024, Judge Joan M. Azrack referred the Motion to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(c). *See* Electronic Order, dated October 2, 2024.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine only if the evidence 'might affect the outcome of the suit under the governing law.'" *Testa v. CareFusion*, 305 F. Supp. 3d 423, 430 (E.D.N.Y. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). As a general matter, "[t]he moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018). Where the burden of proof falls on the nonmoving party, the moving party may "point[] to a lack of evidence to go to the trier of fact on

8

an essential element of the nonmovant's claim." *Id.* In evaluating a motion for summary judgment, courts must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod*, 653 F.3d at 164 (citation omitted). Importantly, at this stage, the district court does not assume the role of trier of fact and instead must only "assess whether there are any factual issues to be tried." *Id.* (citation omitted). Still, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Testa*, 305 F. Supp. 3d at 430.

B.   **Age Discrimination Claims**

Discrimination claims under the ADEA and NYSHRL are governed by the burden-shifting framework developed by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Hanley v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-04246, 2024 WL 1221874, at *3 (E.D.N.Y. Mar. 22, 2024) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)). The analysis proceeds in three parts.

First, a plaintiff must come forward with evidence establishing a prima facie case of employment discrimination. *Id.* At this stage, the plaintiff must merely show that "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." *Id.* (quoting *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 302 n.3 (2d Cir. 2021)).

Once a plaintiff successfully establishes a prima facie case, "the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the employment decision." *Stratton v. Dep't for the Aging*, 132 F.3d 869, 879 (2d Cir. 1997).

Lastly, "if the employer articulates a nondiscriminatory reason for its actions, the

9

presumption of discrimination is rebutted and the burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that a reasonable jury could conclude by a preponderance of the evidence that her age was a 'but for' cause for the adverse action." *Testa*, 305 F. Supp. 3d at 431 (cleaned up). At this step, a plaintiff must do more than merely set forth "evidence from which a factfinder could find that the employer's explanation was false." *Id.* (citation omitted). Rather, the "key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue—that is, whether the record contains sufficient evidence to support an inference of discrimination." *Id.* at 431-32.

### III. DISCUSSION

#### A. ADEA Claim

Solely for purposes of resolving this Motion, the Court assumes (without deciding) that Plaintiff has established a prima facie case of age discrimination.[2] Even with that assumption in mind, however, Defendant has offered a legitimate, nondiscriminatory motive for firing Plaintiff and Plaintiff is unable to show that motive was pretextual. Thus, Defendant prevails at the

---

[2] The Court briefly notes that Defendant argues that Plaintiff fails to establish a prima facie case in part because he was not qualified for his position. Specifically, Defendant contends that Plaintiff's conduct during the June 3 Incident disqualified him, stripping him of the skills required to perform his duties as a psychologist. ECF No. 56-2 at 17. But this argument conflates the second step of the *McDonnell Douglas* test (identifying a legitimate reason for termination) with the first. "[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001), *as amended* (June 6, 2001) (citation omitted). The Second Circuit has held that the qualification step of the prima facie case is not a vehicle for an employer to raise arguments that it had a legitimate reason for terminating an employee. *Id.* Indeed, "where discharge is at issue and the employer has already hired the employee, the inference of minimal qualification is not difficult to draw." *Id.* Plaintiff was an employee of nearly thirty years who was re-appointed as a faculty member only two years prior to his termination. Employers cannot defeat a prima facie case simply by contending that their allegedly legitimate reason for firing an employee itself disqualified the employee. That would make the second step of the *McDonnell Douglas* framework obsolete. Defendant's argument that Plaintiff fails to establish a prima facie case because there are no facts giving rise to an inference of discrimination (ECF No. 56-2 at 17-18) hits closer to the mark, but the Court, noting that establishing a prima facie case is not a high bar, assumes Plaintiff has established such facts.

10

second and third steps of the *McDonnell Douglas* framework and is entitled to summary judgment. The Court discusses each of these steps in turn.

1. Defendant Has Shown a Legitimate, Nondiscriminatory Reason for Firing Plaintiff

As to the second step, Defendant has put forth ample evidence that those with control of Plaintiff's employment status believed from discussions with Plaintiff that he had engaged in inappropriate sexual conduct with the Patient. *See* ECF No. 56-1 ¶ 114. It is undisputed that the Patient communicated her concerns about the physical interaction with Plaintiff to her new clinician several months after the June 3 Incident. *Id.* ¶ 27. Plaintiff does not contest—nor could he—that a patient complaint about inappropriate sexual conduct is a legitimate and nondiscriminatory reason for termination. *See Nambiar v. Cent. Orthopedic Grp., LLP*, No. 19-CV-938, 2024 WL 1528526, at *15 (E.D.N.Y. Feb. 1, 2024) (patient complaints of inappropriate conduct were legitimate non-discriminatory reasons for adverse action), *report and recommendation adopted*, 2024 WL 1270812 (E.D.N.Y. Mar. 26, 2024); *see also Bonaffini v. City Univ. of N.Y.*, No. 20-CV-5118, 2024 WL 4293118, at *8 (E.D.N.Y. Sept. 25, 2024) (describing a defendant's burden to show a "colorable non-discriminatory basis" for adverse employment action as "*de minimis*").

2. Plaintiff Cannot Establish That Defendant's Reason for His Firing Was Pretextual

With respect to the third step, Plaintiff has not put forth "sufficient evidence to support an inference of discrimination." *Testa*, 305 F. Supp. 3d at 431-32. At this stage of the analysis, the "ultimate burden is on the plaintiff to establish that the defendant's reason is *in fact* pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014) (emphasis added). "[A] defendant is entitled to summary judgment where the only evidence of discrimination is that the terminated plaintiff is replaced by a person 'whose membership in

11

protected classes is not identical to plaintiff's, there are no remarks or surrounding evidence suggesting discrimination, and plaintiff's evidence of pretext is weak." *Luo v. AIK Renovation Inc.*, No. 23-CV-5878, 2024 WL 4444283, at *10 (S.D.N.Y. Oct. 8, 2024) (citation omitted).

The evidence presented by Plaintiff to the Court falls far below the aforementioned legal standard to show that there is a genuine issue of material fact that prevents summary judgment at this time.

***Plaintiff's Testimony.*** When asked why he believed that age was the reason behind his termination, Plaintiff contended that "there was no other reasons of the gap in the — there was no — there seemed to be no other reason to me." ECF No. 56-18 at 200:4-11. Plaintiff points to no insensitive or discriminatory comments by any NYIT employee about his age. ECF No. 57-8 at 12. Instead, according to Plaintiff, his age *must* have been the cause of the termination because he can think of no other reason. *See* ECF No. 56-18 at 200:4-11. However, such conclusory allegations are not sufficient to survive summary judgment. *See Yaohua Deng v. Compass Grp. USA Inc.*, No. 08-CV-02842, 2010 WL 11507549, at *5 (E.D.N.Y. Feb. 17, 2010) ("[C]ourts must 'carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation or conjecture.'") (quoting *Bickerstaff v. Vassar College*, 196 F.3d 435, 448 (2d Cir. 1999)). Nor is it sufficient that Plaintiff apparently was replaced by a younger employee. That is especially true where, as here, Plaintiff's replacement was still a member of the protected class. *Testa*, 305 F. Supp.3d at 436 (collecting cases and noting that a discrepancy between discharged employee and his replacement not sufficient by itself to show discrimination); *Curcio v. Roosevelt Union Free Sch. Dist.*, No. 10-CV-5612, 2012 WL 3646935, at *8 (E.D.N.Y. Aug. 22, 2012) (replacement within

the same protected class as Plaintiff weakens inference of discrimination).[3]

***Circumstances Preceding Plaintiff's Termination.*** Just two years before the June 3 Incident, Plaintiff—then 64 years old—was given a new five-year appointment. ECF No. 56-18 at 200:18-24. There is no plausible reason why Defendant would make such a favorable decision as to Plaintiff just two years earlier if it had concerns with respect to his age. *See Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 233 (E.D.N.Y.2009) ("It is difficult to impute bias against a plaintiff in a protected class where the person making the adverse employment decision also made a recent favorable employment decision regarding the plaintiff."). Further, Plaintiff admittedly received favorable reviews *after* the June 3 Incident, *see* ECF No. 57-3, which weakens any inference that NYIT was intent on manufacturing reasons to fire Plaintiff. What is more, Defendant has offered evidence that the various decisionmakers were also members of the protected class. ECF No. 56-22 ¶¶ 2-3 (Dr. Balentine is 63; Dean Gilliar is 67); *see, e.g.*, *White v. Pacifica Found.*, 973 F.Supp.2d 363, 380 (S.D.N.Y. 2013) ("inference of discriminatory animus" weakened by fact that those responsible for terminating plaintiff were members of the protected class). These initial set of facts strongly undermine the case that Defendant was engaged in animus-based decision making.

***The Investigation.*** Plaintiff's principal argument is that the 2017 investigation into his conduct was riddled with procedural irregularities and substantive errors. *See* ECF No. 57-8 at 5-8, 11-15. Plaintiff suggests that the purportedly farcical nature of the investigation gives rise to an inference of age discrimination. The Court disagrees.

Plaintiff is particularly occupied with the nine-month delay from when he reported the

---

[3] The record is not entirely clear as to Plaintiff's replacement's age. Plaintiff (relying on deposition testimony) suggests that the age disparity could be as large as 20 years). ECF No. 57-8 at 14-15. Assuming Plaintiff's replacement was 20 years younger, she would have been in her late 40s, which is within the protected class. *See* 29 U.S.C. § 631(a).

June 3 Incident to Dr. Harper and the commencement of the investigation in February 2017.[4] However, Plaintiff offers no evidence beyond his own speculation to support the contention that the investigation was initiated because of his age. *See* ECF No. 56-18 at 200:4-11 ("[T]here was no other reasons of the gap in the [time between the incident and the start of the investigation]—there was no — there seemed to be no other reason to me."). Defendant, by contrast, has produced uncontested evidence showing that the investigation was initiated in response to a complaint by the Patient to her new clinician in early 2017. ECF No. 57-2 at 107:6-108:22; 168:6-14; ECF No. 57-4 at 23:14-18; ECF No. 56-9 (email chain). Plaintiff's speculation—contradicted by the evidence—does not meet his burden to show an issue of material fact at this stage. *Yaohua Deng*, 2010 WL 11507549, at *5 ("mere speculation" about discriminatory motive insufficient at summary judgment stage) (citation omitted).

There are similar complaints by Plaintiff about the process afforded to him during the investigation. Plaintiff's Opposition Brief is replete with examples of supposed irregularities in the investigation. ECF No. 57-8 at 5-7 (over two pages worth of complaints). However, any disputes as to the nature and quality of the investigation (even if accepted as true for purposes of the summary judgment motion) are ultimately beside the point because none of the purported irregularities even remotely suggest that age was at all a factor in Plaintiff's dismissal. *See Chen v. Stony Brook Univ. Advancement*, No. 20-4250, 2022 WL 289317, at *2 (2d Cir. Feb. 1, 2022) ("[T]his evidence could suffice to establish a genuine dispute as to whether the reasons given by Defendants were pretextual—but not that the reasons were pretext for . . . discrimination."). Indeed, "[e]ven construing all inferences in plaintiff's favor, the evidence merely suggests that

---

[4] The parties dispute the nature of the June 2016 meeting between Plaintiff and Dr. Harper. Dr. Harper maintains that Plaintiff never informed him that physical contact was made during the June 3 Incident. For purposes of this Motion however, the Court accepts Plaintiff's representation that he recounted the full nature of the June 3 Incident to Dr. Harper in June 2016. *See supra* Part I.A.3.

defendant[] conducted an imperfect investigation," not that animus was at play. *DeFina v. Meenan Oil Co.*, 924 F. Supp. 2d 423, 435 (E.D.N.Y. 2013) (Bianco, J.).

There is no evidence in the record that age at all contributed to Defendant's decision to terminate Plaintiff. Plaintiff's own contemporaneous notes of the June 3 Incident confirm the recollections of Dr. Harper and Thompson that Plaintiff admitted in February 2017 to making contact with the Patient's breasts and that Dr. Harper and Thompson reported that information to those who had the power to recommend Plaintiff's termination. *See* ECF No. 56-15 (Plaintiff's notes); ECF No. 57-4 at 63:4-7; ECF No. 57-2 at 135:5-14. Those NYIT officials who were involved in the decision to fire Plaintiff (Dr. Shoureshi, Dr. Balentine, and Dean Gilliar) relied on evidence that they believed at the time was uncontroverted—specifically, that Plaintiff had admitted to touching the Patient's breasts during therapy. ECF No. 56-1 ¶¶ 114-16. Plaintiff has not provided any evidence that the decisionmakers at NYIT, after speaking with Plaintiff, disbelieved the Patient's story, which ultimately proves fatal to Plaintiff's argument. *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (courts focus not on the "truth of the allegations against Plaintiff" or the "reliability of the evidence" an employer considered in making a decision, but rather on the employer's motivation) (emphasis omitted). Thus, Plaintiff's contention that his contact with the Patient's chest was unintentional is irrelevant to the question of whether discrimination was afoot. That is because, "[t]he question in any discrimination case is not whether defendant's decision to fire plaintiff was correct but whether it was discriminatory." *DeFina*, 924 F. Supp. 2d at 435.

At bottom, Plaintiff's protests about the nature of his conduct and the ensuing investigation do not create an issue of fact regarding the basis for his termination. *See Giaccio v. Michael Anthony Contracting Corp.*, No. 19-cv-4492, 2022 WL 815931, at *5 (E.D.N.Y. Feb.

16, 2022) ("[T]he key is whether there is sufficient evidence in the record from which a reasonable trier of fact could find in favor of plaintiff on the ultimate issue—that is, whether the record contains sufficient evidence to support a reasonable inference that the prohibited discrimination occurred.").

Extensive discovery gave Plaintiff ample opportunity, for example, to obtain email correspondence between NYIT employees discussing Plaintiff, to obtain records that would indicate replacing Plaintiff with another employee, or to review records of similarly situated employees to determine whether NYIT had treated them similarly. However, the record is devoid of these hypothetical facts.[5] Plaintiff's claim ultimately rests on the unsupported conclusion that because the investigation was not as thorough as he thought it could have been, it was Plaintiff's age that must have been the real motivation for his termination. ECF No. 57-8 at 11-15. But the record with respect to Plaintiff's argument that the investigation began nine months late leaves no doubt that NYIT began its investigation as soon as it became aware of the Patient's complaint in early 2017. ECF No. 56-10 (email chain commencing investigation). Further, it is now undisputed that Dr. Harper maintained no power to make decisions with respect to Plaintiff's employment and no one who did maintain such power at NYIT was aware of the June 3 Incident until the Patient came forward.[6] ECF No. 56-1 ¶ 118.

---

[5] Plaintiff suggests (ECF No. 57-8 at 11) that the fact that NYIT gave him a postdated clinical faculty agreement is evidence of pretext. However, the clinical faculty agreement was signed in January 2017—prior to the Patient's report of the June 3 Incident. *See* ECF No. 56-8 (clinical faculty agreement).

[6] In his Opposition Brief, Plaintiff quotes Judge Denis Hurley's decision at the motion to dismiss stage of this case, noting that "[a]n inference of discrimination can arise from circumstances including . . . the sequence of events leading to the plaintiff's discharge." *Goldblatt v. N.Y. Inst. of Tech.*, No. 18-CV-00265, 2020 WL 5027150, at *3 (E.D.N.Y. Aug. 25, 2020) (citation omitted). The standard for summary judgment, as Judge Hurley noted, is higher than that under Rule 12(b)(6). *Id.* And in any event, the case presented to Judge Hurley at the motion to dismiss stage was more limited in critical respects from the one before the Court now. That is particularly true as it relates to Judge Hurley's primary concern about the "nine-month delay" in between when Plaintiff first informed Dr. Harper about the investigation and when the investigation began. *Id.* at *5. Indeed, the narrative presented to Judge Hurley seemed to suggest that NYIT itself sat on the information and *sua sponte* began an investigation just prior to

***Comparators.*** Plaintiff suggests he that suffered age discrimination because NYIT's handling of other employment matters demonstrates that it treated younger, similarly situated employees more favorably than Plaintiff.[7] It is well established that, if true, such disparate treatment can give rise to an inference of discrimination. *E.g.*, *Rosario v. Hilton Hotels Corp.*, 476 F. App'x 900, 902 (2d Cir. 2012). Plaintiff's arguments in this case, however, face serious hurdles.

Though the Amended Complaint alleged two instances of disparate treatment, the evidence presented at this stage does not demonstrate that either employee was similarly situated. *See Giaccio*, 2022 WL 815931, at *7 (requiring comparators "have a high degree of similarity to [the Plaintiff's] own situation"). For example, Plaintiff first claims that one employee—who was 10 years *older* than Plaintiff—was not fired after he engaged in a sexual affair with his administrative assistant. *See* ECF No. 21 ¶¶ 20-21; ECF No. 22 ¶ 5. Plaintiff's example is self-defeating because Plaintiff essentially alleges that NYIT treated an *older* employee *more favorable* than a younger one (Plaintiff). Plaintiff does not cite—and the Court is unaware of— any legal authority to support the strange conclusion that more favorable treatment of an *older* employee demonstrates age discrimination. With respect to Plaintiff's second example of another employee, the facts alleged are not remotely similar. ECF No. 21 ¶¶ 20-21. That other employee apparently was dating a NYIT student (not a patient) and resigned from his job (was

---

Plaintiff's 67th birthday. *See* ECF No. 24 at 7-8. But discovery has demonstrated that NYIT initiated an investigation only *after* receiving a complaint directly from the Patient, which certainly weakens any inference that Plaintiff's age was behind the decision to fire him. There is no reference in Judge Hurley's decision on the motion to dismiss regarding the Patient's complaint in early 2017 as the immediate trigger for the investigation of Plaintiff for the June 3 Incident. *See Goldblatt*, 2020 WL 5027150, at *1.

[7] In fact, Plaintiff's Opposition Brief makes almost no mention of the disparate treatment argument. The Court notes that "when a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned." *Malik v. City of New York*, 842 F. App'x 281, 284 (2d Cir. 2021) (mem.). Nonetheless, the Court addresses this topic in the Report and Recommendation.

not fired). ECF No. 56-18 at 204:20-206:8. These examples—one of which is inconsistent with Plaintiff's case and the other of which is inapposite—do not give rise to the conclusion that Plaintiff's age was the cause of his firing.

\*       \*       \*

The sum total of Plaintiff's argument is that Plaintiff's replacement by a younger employee, combined with a faulty investigation into the June 3 Incident regarding physical contact between Plaintiff and the Patient, create a genuine issue of material fact which prevents summary judgment. But as discussed, Plaintiff's grievances with the process (even if true) are ultimately irrelevant. *DeFina*, 924 F. Supp. 2d at 435. And the other facts fail to show age discrimination. Rather, the evidence demonstrates that (1) no one at NYIT made disparaging comments to Plaintiff about his age; (2) Plaintiff received a favorable employment decision and favorable reviews just prior to the early 2017 investigation; (3) Plaintiff was replaced by another member of the protected class; (4) the decisionmakers who fired Plaintiff were also members of the protected class; and (5) NYIT did not treat younger, similarly situated employees more favorably. Accordingly, the undersigned recommends that the Court grant summary judgment and dismiss Plaintiff's ADEA claim with prejudice.

### B.     NYSHRL Claim

Claims under the NYSHRL are analytically identical to those brought under the ADEA. *See Hanley* 2024 WL 1221874, at \*3. Thus, for the same reasons outlined above, the Court recommends granting summary judgment, and that Plaintiff's NYSHRL claim be dismissed with prejudice.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully recommends the Court GRANT in full Defendant's Motion for Summary Judgment (ECF No. 56) and DISMISS Plaintiff's Amended Complaint with prejudice.

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2), the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Azrack. FAILURE TO FILE TIMELY OBJECTIONS SHALL CONSTITUTE A WAIVER OF THOSE OBJECTIONS BOTH IN THE DISTRICT COURT AND ON LATER APPEAL TO THE UNITED STATES COURT OF APPEALS. *See Thomas v. Arn*, 474 U.S. 140, 154-55 (1985); *Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *F.D.I.C. v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995).

Dated: Central Islip, New York
November 26, 2024

SO ORDERED:

s/ Lee G. Dunst

**LEE G. DUNST**
United States Magistrate Judge