UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROBERT GOLDBLATT,

                             Plaintiff,

          -against-

NEW YORK INSTITUTE OF TECHNOLOGY,

                             Defendant.
------------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
18-CV-00265 (JMA) (LGD)

FILED
CLERK

2/24/2025 11:30 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

      Presently before the Court is the motion by Defendant New York Institute of Technology ("Defendant" or "NYIT") for summary judgment pursuant to FED. R. CIV. P. 56, and Magistrate Judge Lee G. Dunst's November 26, 2024, Report and Recommendation ("R&R") that the Court grant summary judgment on behalf of Defendant. (See R&R, ECF No. 61; Def's Mot. for Summary Judgment, ECF No. 56; Am. Compl., ECF No. 21.) For the reasons explained below, the Court ADOPTS the R&R's conclusion that Defendant's motion for summary judgment should be granted and that the Amended Complaint must be dismissed.

## I. BACKGROUND

### A. Facts

      Defendant NYIT is a private non-for-profit educational institution with a campus in Old Westbury, New York. (ECF No. 56-1 ¶¶ 2-3). Plaintiff Robert Goldblatt began working as a faculty member at NYIT in the College of Osteopathic Medicine in 1991. (Id. ¶ 4.) Plaintiff worked as a faculty member for over three decades. (Id.) In that role, Plaintiff both taught students and worked as a clinical psychologist, counseling patients at the W. Kenneth Riland Academic Health Care Center ("AHC") at NYIT. (Id. ¶ 5, 11.) Plaintiff reported directly to the Chair of the Department of Family Medicine, Dr. Nancy Bono. (Id. ¶ 15.) Dr. Bono in turn reported to the Dean of NYITCOM, Dr. Wolfgang Dilliar. (Id. ¶ 16.) Additionally, Dr. Brian Harper, Medical

Director of the AHC, was responsible for ensuring compliance with legal regulations and laws respecting the delivery of healthcare. (Id. ¶¶ 18-19.) Dr. Harper reported to the Vice President of Medical Affairs and Global Health, Dr. Jerry Balentine, who reported to NYIT's President. (Id. ¶¶ 17-23.)

In 2015, Plaintiff started treating a female patient (the "Patient.") (ECF No. 57-6 ¶ 6.) According to Plaintiff, the Patient began expressing feelings of attraction toward Plaintiff and reported fantasizing about Plaintiff when the Patient had sexual relations with her husband. (ECF No. 56-18 at 86:6-24.) Plaintiff did not believe that the Patient would "act on her impulses," but during a session on June 3, 2016, the Patient allegedly "touched [Plaintiff's] inner thigh in an inappropriate manner." (Id. ¶¶ 7-8 (the "June 3 Incident")). According to Plaintiff's contemporaneous handwritten notes:

> Pt. indicated that she wanted to be closer and that she was getting warm. She touched me sexually in the crotch area and was responded by touching her breasts. No clothing was removed or attempted. No kissing or touching of flesh. Only exterior clothing. After the brief exchange, it was clear boundaries had to be re established and adhered to. The session ended with the clear understanding that this would be the next discussions [sic]. It was clear both pt + therapist had crossed a line.

(ECF No. 56-15). Plaintiff, however, rejects his prior description of the June 3 Incident. Instead, Plaintiff now recollects that he "rose from [his] chair and physical contact was inadvertently made during which time [he] made contact with her chest area." (ECF No. 57-6 ¶ 8.)

Later that same day, Plaintiff informed Dr. Harper of the incident and requested that Plaintiff be discharged from his care. (See ECF No. 56-18 at 125:3-19; 134:9-19.) Plaintiff and Dr. Harper have different recollections of the conversation; Plaintiff asserts that he told Dr. Harper that the Patient touched Plaintiff's legs, although Dr. Harper does not remember discussion of any physical contact. (See ECF No. 56-18 at 133:2-12; see also ECF No. 57-2 at 98:3-7.)

2

Plaintiff then drafted a discharge letter, writing that he could no longer treat the Patient due to a "major breach of trust" that occurred during the June 3 session, and that the "[t]he relationship ha[d] been compromised in a significant manner impairing objectivity." (ECF No. 56-1 ¶¶ 63-68; ECF No. 56-13 (Discharge Letter).) There is disagreement in the record as to whether Dr. Harper reviewed this letter before Plaintiff signed off on it. (See, e.g., ECF No. 57-2 at 102:14-104:2; 111:5-20; 101:11-22.) At no point in 2016 did information regarding the June 3 Incident or Plaintiff's discharge reach Dr. Ballentine. (See ECF No. 56-1 ¶ 7.)

Nine months after the June 3 Incident, the Patient reported to her new clinician, Dr. Adena Leder, that she had experienced an inappropriate sexual interaction with Plaintiff while he was treating her. (Id. ¶¶ 27-29.) Dr. Leder reported the Patient's comments to Dr. Harper, who then reported the incident to NYIT's Associate General Counsel and Privacy Officer Jordan Thompson. (Id. ¶¶ 30-31.) Thompson informed Executive Director of Human Resources Carol Jablonsky, General Counsel Catherine Flickinger, and Dr. Balentine of the report by email. (See ECF No. 56-9.) Dr. Harper then met with Dr. Leder to discuss the incident. (See ECF No. 56-11.) The Patient refused to reveal her identity, but Dr. Harper ascertained that she was the same patient who had been discharged by Plaintiff less than a year earlier. (See ECF No. 56-1 ¶ 55.) On March 1, 2017, Thompson and Dr. Harper met with Plaintiff to discuss the June 3 Incident. (Id. ¶ 72.) Thompson later concluded that the touching was "mutual[]" as a result of the discussion with Plaintiff. (ECF No. 57-4 at 63:4-7.) Dr. Harper later testified that because of this conversation, he thought Plaintiff described "inappropriate contact . . . and he felt bad about that." (ECF No. 57-2 at 135:5-14.) Plaintiff asserts that during this meeting he described the contact with the Patient as unintentional and inadvertent. (ECF No. 57-6 ¶ 8.)

Shortly after meeting with Plaintiff, Thompson wrote Flickinger with his immediate impressions, stating "[j]ust wrapping up the meeting. Goldblatt admitted to touching her breasts."

3

(Id. ¶ 76; ECF No. 56-14). This impression was also communicated to Dr. Balentine. (See ECF No. 56-1 ¶ 77.) As a result, Dr. Balentine immediately suspended Plaintiff from seeing patients until the investigation concluded. (Id. ¶ 82.) Plaintiff asserts that he was not given notice that he was the subject of this investigation and that he was not given the opportunity to appear with legal counsel. (ECF No. 57-6 ¶¶ 17-19.) Additionally, given the Patient's reluctance to provide her name, no one at NYIT conducted a formal interview of the Patient, despite efforts to do so. (See ECF No. 56-1 ¶¶ 52-56.)

On or about March 10, 2017, Dr. Balentine recommended that Plaintiff be terminated based on his review of the investigation. (Id. ¶¶ 102-07.) According to Dr. Balentine, "[t]he facts were clear. And it's a transgression of a provider, an act of sexual contact with a patient is such a breaking of trust that I did not think there was any other investigation necessary." (ECF No. 57-5 at 69:24-70:17.) Despite Plaintiff's lengthy tenure at NYIT, Dr. Balentine concluded that the nature of the allegations and his review of the investigation necessitated his recommendation that Plaintiff be terminated. (ECF No. 56-1 ¶¶ 106-07.)

On March 9, 2017, after consulting with Dean Gilliar, Dr. Balentine recommended to Interim President Dr. Rahmat Shoureshi that Plaintiff be fired. (Id. ¶ 113.) Dr. Balentine noted that "[b]ased on our investigation, we have determined that Dr. Goldblatt committed serious professional misconduct in the course of his clinic duties." (Id. ¶ 114.) Dr. Balentine noted that, pursuant to the NYITCOM Faculty Handbook, "[a] faculty member may be dismissed by the President . . . for cause, based on the recommendation of the Dean [Gilliar] and the Vice-President for Health Sciences and Medical Affairs [Dr. Balentine]." (Id. ¶ 114; ECF No. 56-16.) That same day, Dr. Shoureshi approved Plaintiff's termination. (ECF No. 56-1 ¶ 115; ECF No. 56-16.) Plaintiff was notified of his termination within the next few days. (ECF No. 56-1 ¶ 119-21.) NYIT

subsequently replaced Plaintiff with a younger individual. (See ECF No. 57-5 at 88:25-90:4.) Plaintiff was 66 years old when his employee ended at NYIT.  (ECF No. 56-1 ¶ 122.)

### B. Procedural History

On January 15, 2018, Plaintiff filed his original complaint, alleging that Defendant improperly fired him because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-34 and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq. (McKinney).  (ECF No. 1.)  On June 28, 2019, Plaintiff amended his complaint with the same causes of action.  (Am. Compl., ECF No. 21.)  On October 17, 2019, Defendant moved to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 23.)  On August 25, 2020, Judge Denis R. Hurley (to whom the case was previously assigned) denied the motion to dismiss on the age discrimination claims.  (See generally ECF No. 28.)

On September 15, 2023, Defendant moved for summary judgment on the remaining age discrimination claims.  (ECF No. 56.)  Plaintiff opposed the Motion.  (ECF No. 57.)  Plaintiff timely filed a reply.  (ECF No. 58.)  On October 2, 2024, the undersigned referred the Motion to Magistrate Judge Lee G. Dunst for an R&R pursuant to 28 U.S.C. § 636(c).  See October 2, 2024 Order.  On November 26, 2024, Judge Dunst issued his R&R that Defendant's motion for summary judgment be granted and that the Amended Complaint be dismissed with prejudice.  (See ECF No. 61.)  On December 10, 2024, Plaintiff timely filed his objections to the R&R.  (ECF No. 64.)  On December 24, 2024, Defendant timely filed its opposition to Plaintiff's objections.  (ECF No. 66.)

## II.   LEGAL STANDARD

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see FED. R. CIV. P. 72(b)(3) (similar).  In reviewing a magistrate judge's report and recommendation, a court must

5

"make a de novo determination of those portions of the report or . . . recommendations to which objection[s] [are] made." 28 U.S.C. § 636(b)(1)(C) (emphasis added); see FED. R. CIV. P. 72(b)(3) (similar); see also United States ex rel. Coyne v. Amgen, Inc., 243 F. Supp. 3d 295, 297 (E.D.N.Y. 2017), aff'd, 717 F. App'x 26 (2d Cir. 2017). By contrast, those portions of a report and recommendation to which there is no specific reasoned objection are reviewed for clear error. See, e.g., Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008). Clear error lies only where, after examining the record, the Court is "left with the definite and firm conviction that a mistake has been committed." Cooper v. Harris, 581 U.S. 285, 309 (2017) (internal quotation marks omitted). Additionally, "the district court 'will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.'" Fossil Grp., Inc. v. Angel Seller LLC, 627 F. Supp. 3d 180, 186-87 (E.D.N.Y. 2022) (quoting United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019)).

In the absence of any objections, "the district court need only satisfy itself that there is no clear error on the face of the record." Estate of Ellington ex rel. Ellington v. Harbrew Imports Ltd., 812 F. Supp. 2d 186, 189 (E.D.N.Y. 2011) (internal citations omitted). Relatedly, "[w]here parties receive clear notice of the consequences, failure to timely object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision." Smith v. Campbell, 782 F.3d 93, 102 (2d Cir. 2015) (internal citation and quotation marks omitted); see Phillips v. Long Island R.R. Co., 832 F. App'x 99, 100 (2d Cir. 2021) (same).

### III.   DISCUSSION

#### A. Summary Judgment Standard

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

6

nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." Choi v. Tower Research Capital LLC, 2 F.4th 10, 16 (2d Cir. 2021); see McKinney v. City of Middletown, 49 F.4th 730, 737 (2d Cir. 2022) ("No genuine dispute of material fact exists when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.") (internal quotation marks omitted). "The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." Jaffer v. Hirji, 887 F.3d 111, 114 (2d Cir. 2018) (internal quotation marks omitted). For any burden of proof that rests with the nonmoving party, the movant can "point[ ] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Id. (internal quotation marks and alterations omitted). Once the moving party carries its burden, "the nonmoving party must come forward with evidence that would be sufficient to support a jury verdict in its favor." McKinney, 49 F.4th at 738 (internal quotation marks omitted). In this analysis, the Court must "construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." ING Bank N.V. v. M/V Temara, 892 F.3d 511, 518 (2d Cir. 2018). Ultimately, "[t]he role of the district court on summary judgment is 'not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'" McKinney, 49 F.4th at 738 (quoting Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011)).

### B. Age Discrimination

Within the summary judgment context, discrimination claims under the ADEA and NYSHRL are governed by the burden shifting framework developed by the Supreme Court in McDonnell Douglas v. Green, 411 U.S. 792 (1973). See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010)). The analysis proceeds in three parts. First, a plaintiff must come forward with evidence establishing a prima facie case of employment discrimination. Id. At this stage, the plaintiff must show that "(1) that she was within the protected age group, (2) that she

7

was qualified for the position, (3) that she experienced adverse employment action, and (4) that the action occurred under circumstances giving rise to an inference of discrimination." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 302 n.3 (2d Cir. 2021)). "Once the plaintiff has established a prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for its adverse action." Bart v. Golub Corporation, 96 F.4th 566, 570 (2d. Cir. 2024) (internal quotations and citation omitted.) "Upon that showing, the burden then shifts back to the plaintiff to prove that the employer's stated reason was pretext for discrimination." Id.

### C. Analysis

Plaintiff asserts that the R&R incorrectly applied the summary judgment standard under the McDonnell Douglas framework.[1] Specifically, Plaintiff contends that the R&R sets too high a standard in that "it appears as if the R&R was under the expectation that discovery should have uncovered a 'smoking gun' and that without the same, then no claim for discrimination can be established." (ECF No. 64 at 3.) Plaintiff then points to several aspects of the R&R that he believes "ignore" instances where facts are disputed or indicate "pretext." (Id. at 4-6.) First, Plaintiff asserts there are disagreements of fact in the record, and points to the inconsistent recollection of the initial meeting between Dr. Goldblatt and Dr. Harper in June of 2016. (Id. at 3.) Second, Plaintiff contends that procedural irregularities during the investigation establish pretext. (Id. at 4.) Third, Plaintiff argues that the R&R should have given "Dr. Goldblatt the benefit of the doubt"

---

[1] As Defendant points out in its memorandum of opposition to Plaintiff's objections, Plaintiff provides the wrong legal standard for summary judgment. (See ECF No. 64 at 3) ("district courts must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.") (citing Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir 1994.)  That standard, however, is "not the standard to evaluate a summary judgment motion, but rather, the lower standard to evaluate a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)." (ECF No. 66 at 3.) Although Plaintiff incorrectly cites the proper standard, it is clear from Plaintiff's objections that he believes the R&R incorrectly applies the applicable summary judgment standard, and not the lower motion to dismiss standard. (See, e.g., ECF No. 64 at 3) ("A judgment sought should be rendered only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.")

as to the explanation of the June 3 Incident. (Id. at 5.) Finally, Plaintiff suggests that the hiring of a younger, less experienced employee should have led to the inference that a "motivating factor" of the termination was "age-related discriminatory animus." (Id. at 6.) Out of an abundance of caution, the Court conducted a de novo review of the full record and applicable law. For the following reasons, each of these objections fail, and the Court adopts Judge Dunst's R&R.

First, Plaintiff is incorrect that the R&R "ignores" disputed facts, such as the content of the initial discussion between Plaintiff and Dr. Harper. In fact, the R&R "accepts Plaintiff's representation that he recounted the full nature of the June 3 Incident to Dr. Harper in June 2016." (R&R at 14, n.4). Rather, Judge Dunst found that even after crediting Plaintiff's account of the dispute in full, "Plaintiff offers no evidence beyond his own speculation to support the contention that the investigation was initiated because of his age." (Id.) On a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." McKinney, 49 F.4th at 738 (internal citations omitted). Here, Judge Dunst did not resolve disputed facts. Rather, the R&R properly assessed that the dispute over how much information was divulged at the June 2016 was irrelevant given the substantial evidence in the record that the investigation "was initiated in response to a complaint by the Patient to her new clinician in early 2017." (R&R at 14) (citing ECF No. 57-2 at 107:6-108:22; 168:6-14; ECF No. 57-4 at 23:14-18; ECF No. 56-9.) Plaintiff's bare speculation that the gap between his conversation with Dr. Harper and the launch of the investigation suggests discriminatory motive is insufficient to survive summary judgment. (R&R at 14); See Bickerstaff v. Vassar College, 196 F.3d 435, 448 (2d Cir. 1999) (stating that courts must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation or conjecture.") Thus, Plaintiff's argument that the R&R ignores disputed facts that could give rise to an inference of discriminatory intent fails.

Second, the Court rejects Plaintiff's assertion that procedural irregularities in the investigation are sufficient to create triable issues of fact as to Defendant's alleged discriminatory intent. Plaintiff suggests that because the investigation was "abnormal," "the investigation of Plaintiff is something that should be preserved for a trier of fact, particularly because discrimination is typically established through 'bits and pieces' as acknowledged in the Court's prior Decision on motion to dismiss." (ECF No. 64 at 4.) Again, it appears Plaintiff mistakes the standard at the pleading stage for the standard at summary judgment. The R&R makes clear that "any disputes as to the nature and quality of the investigation (even if accepted as true for purposes of the summary judgment motion) are ultimately beside the point because none of the purported irregularities even remotely suggest that age was at all a factor in Plaintiff's dismissal." (R&R at 14.) Plaintiff once more attempts to bury a point that the R&R addresses directly – that despite any perceived procedural infirmities, there is no evidence of discriminatory intent. (Id. at 14-15) ("'[e]ven construing all inferences in plaintiff's favor, the evidence merely suggests that defendant[] conducted an imperfect investigation,' not that animus was at play.") (quoting DeFina v. Meenan Oil Co., 924 F. Supp. 2d 423, 435 (E.D.N.Y. 2013)).

Third, Plaintiff's suggestion that Plaintiff's innocent explanation of what occurred during the June 3 Incident should get the "benefit of the doubt" is both incorrect and irrelevant. Again, the Court need not "resolve disputed issues of fact," as to what occurred at the June 3, 2016 session between the Plaintiff and the Patient. McKinney, 49 F.4th at 738 (internal citations omitted). Regardless of what transpired, Plaintiffs' contemporaneous notes were more than sufficient to generate the investigation which followed, and "confirm the recollections of Dr. Harper and Thompson that Plaintiff admitted in February 2017 to making contact with the Patient's breasts and that Dr. Harper and Thompson reported that information to those who had the power to recommend Plaintiff's termination." (R&R at 15.) All decisionmakers at the time attest that these

10

notes, in combination with the investigation, formed the basis for their ultimate decision to fire Plaintiff for inappropriate conduct with the Patient. (See ECF No. 56-1 ¶¶ 114-16; ECF No. 57-4 at 63:4-7; ECF No. 57-2 at 135:5-14.) Plaintiff has adduced no evidence that any of these decisionmakers either disbelieved the Patient or rejected the validity of Plaintiff's contemporaneous notes, "which ultimately proves fatal to Plaintiff's argument." (R&R at 15.) (internal citations omitted). Thus, the R&R properly analyzes the significance of Plaintiff's contemporaneous notes and their role in influencing the decision to terminate Plaintiff.

Finally, Plaintiff's contention that the mere hiring of a younger, cheaper employee prompts an inference of age discrimination is mistaken. As the R&R points out, the replacement was, according to the sparse record on this point, at most "20 years younger . . . in her late 40s, which is within the protected class." (Id. at 13 n.3 (citing 29 U.S.C. § 631(a).)) Additionally, the R&R points out two other facts that weigh against discriminatory animus:

> Just two years before the June 3 Incident, Plaintiff—then 64 years old—was given a new five-year appointment. ECF No. 56-18 at 200:18-24. There is no plausible reason why Defendant would make such a favorable decision as to Plaintiff just two years earlier if it had concerns with respect to his age. See Chuang v. T.W. Wang Inc., 647 F. Supp. 2d 221, 233 (E.D.N.Y.2009) ("It is difficult to impute bias against a plaintiff in a protected class where the person making the adverse employment decision also made a recent favorable employment decision regarding the plaintiff."). Further, Plaintiff admittedly received favorable reviews after the June 3 Incident, see ECF No. 57-3, which weakens any inference that NYIT was intent on manufacturing reasons to fire Plaintiff. What is more, Defendant has offered evidence that the various decisionmakers were also members of the protected class. ECF No. 56-22 ¶¶ 2-3 (Dr. Balentine is 63; Dean Gilliar is 67); see, e.g., White v. Pacifica Found., 973 F.Supp.2d 363, 380 (S.D.N.Y. 2013) ("inference of discriminatory animus" weakened by fact that those responsible for terminating plaintiff were members of the protected class).

R&R at 13. Plaintiff's response to these facts is that replacing him "with a younger and less expensive employee is advantageous to NYIT. The disadvantage of having Dr. Goldblatt's salary on the books is a byproduct of Dr. Goldblatt's age." (ECF No. 64 at 6.) Without more, however,

11

Plaintiff is again only speculating about Defendant's motive. The mere fact that the replacement is younger is insufficient to survive summary judgment. See McEvoy v. Fairfield Univ., 844 F. App'x 420, 422 (2d Cir. 2021) ("even if we assumed that [Defendant's] proffered reasons were pretextual, on summary judgment [Plaintiff] did not provide contemporaneous evidence of age discrimination, other than the fact that her replacement was much younger.") Thus, Plaintiff's objections to the R&R are rejected, the undersigned grants Defendant's motion for summary judgment, and the Amended Complaint is dismissed with prejudice.

## IV.   CONCLUSION

The Court agrees with and adopts Judge Dunst's analysis and recommendations set forth in the thorough and well-reasoned R&R. Accordingly, Defendant's motion for summary judgment is GRANTED and the Amended Complaint is dismissed with prejudice. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**
Dated:   February 24, 2025
         Central Islip, New York

                                                                    (/s/ JMA)
                                                              JOAN M. AZRACK
                                                       UNITED STATES DISTRICT JUDGE